Azadia **MAMOULIAN, et al.,**
**Plaintiffs–Respondents,**

v.

**ST. LOUIS UNIVERSITY, et al.,**
**Defendants–Respondents,**

v.

Arthur **NEWMAN, et al.,**
**Movants–Appellants.**

**Nos. 54823, 55054.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1989.

Case Transferred to Supreme Court May 16, 1989.

Case Retransferred to Court of Appeals Dec. 14, 1989.

Original Opinion Reinstated Dec. 26, 1989.

Susan H. Mello, Clayton, for appellants.

Mark G. Arnold, Richard Aloysius Ahrens, John L. Davidson, Jr., Peter H. Ruger, St. Louis, William Clark Kelly, Jefferson City, John R. Green II, Green, Hennings & Henry, David S. Slavkin, Bryan, Cave, McPheeters & McRoberts, St. Louis, for respondents.

STEPHAN, Judge.

This is an appeal from a final order of the trial court dismissing a will contest action and approving a settlement thereof pursuant to § 473.085, RSMo 1986. The trial court found that awarding movants $30,000 of the $600,000 settlement was fair, just and reasonable under the facts of this case. Movants appeal; we affirm.

We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This standard also applies to a trial court's order approving a settlement agreement. *Centerre Trust Co. v. Jackson Saw Mill Company*, 736 S.W.2d 486, 496 (Mo.App. 1987). We give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Trenton Trust Company v. Western Surety Company*, 599 S.W.2d 481, 483 (Mo. banc 1980). Conflicts in the evidence are resolved by the trial court and must be taken in accord with the result reached by the trial court. *Id.* A review of the necessary facts, viewed in a light most favorable to the judgment below follows.

This action concerns the 1976 will, and its codicils, of Clara Drefs, deceased, which left 90% to 95% of her estate to St. Louis University. With the exception of a life interest in a trust for her sister, Azadia

Mamoulian, the will left nothing to any of the decedent's heirs at law.

A will contest was initiated by Azadia Mamoulian and five Cammack brothers, the sons of a predeceased sister (collectively the "plaintiffs"). The children of a predeceased brother ("movants") were originally named as defendants but were subsequently dismissed.

Prior to naming them as defendants in the action, plaintiffs' trial attorney, David Lupo, attempted to persuade movants to participate in the will contest. He spoke with each of the surviving children: Louis Frank Newman, David Newman, Arthur Newman, John Newman, and Jean Hargrave. Mr. Lupo also corresponded with an attorney who represented the six children of a predeceased nephew. In addition, Mr. Lupo sent each of the movants a proposed contract of employment. All declined to join the action or to assume any responsibility for the burden or expense of the litigation.

Plaintiffs planned to submit on a theory of insane delusions. Plaintiffs had a submissible case, but it was going to be difficult to persuade a jury that decedent was in fact insane and not merely eccentric. St. Louis University intended to defend on the theory that decedent deliberately omitted her family from her will, because she preferred to leave her money to local charities rather than her already wealthy relatives.

Another obstacle was decedent's 1968 will. Plaintiffs' petition challenged the 1976 will and its three codicils. There was, however, an earlier will which was basically the same. In order to obtain the relief they sought, plaintiffs would have to challenge both wills. Most of the evidence regarding decedent's delusions, however, related to the period after 1968.

After discovery was completed, but prior to trial, plaintiffs and St. Louis University agreed to settle. Movants stipulated that the settlement negotiations were at arm's length and that the offer made by St. Louis University was "the best offer they were going to get."

The parties agreed that plaintiffs would accept $600,000.00 in settlement and dismiss the will contest with prejudice. St. Louis University agreed to assume liability for whatever estate or inheritance taxes might ultimately be assessed. Ms. Mamoulian renounced her life interest in the trust created under the will, and the parties agreed the 1976 will and its codicils would be admitted to probate.

In January 1983, the settlement was approved and the will contest was dismissed. St. Louis University obtained a partial distribution from the estate with which it satisfied its obligations to plaintiffs.

In September 1983, movants filed a collateral attack on the settlement pursuant to former Rule 74.32. The Missouri Supreme Court sustained the attack and set aside the 1983 settlement and dismissal. *Mamoulian v. St. Louis University*, 732 S.W.2d 512 (Mo. banc 1987). The case was remanded to the circuit court to determine if the settlement was fair and reasonable under the circumstances and whether the movants in fact stood in the same position as the plaintiffs.

An evidentiary hearing was held on December 7, 1987. The movants, with the exception of Mrs. Lewis Frank Newman, were all represented by counsel at the hearing. Mrs. Newman had notice of the hearing by certified mail to her home and by service on her counsel.

On April 22, 1988, the trial court entered an order approving the original settlement and awarding movants $30,000. On May 17, 1988, the trial court entered an amended order which included specific findings of fact, and a denial of movants' post-trial motion. This appeal followed.

Movants raise four points on appeal. They allege that the trial court erred in failing to follow the instructions of the Supreme Court on remand by failing to scrutinize the settlement in accordance with the holding that due to the unique nature of a will contest, plaintiffs were deemed to have represented the other heirs and movants were to be treated the same as other similarly situated heirs, plus the trial court failed to scrutinize the accounting report regarding fees and expenses in-

curred in creating the common fund. Secondly, the trial court erred in signing the findings of fact and conclusions of law, as prepared by plaintiffs, because there was no substantial evidence to support them. Third, the trial court erred in considering claims that movants should be penalized for not "participating" in the lawsuit because that issue had already been determined. Lastly, the trial court erred in failing to award movants prejudgment interest.

■ In their first point movants assert that the trial court erred in failing to follow the Supreme Court's instructions because it failed to divide the settlement equally and because it failed to scrutinize the estate valuation and expense reports. Contrary to what movants believe, the ultimate issue is whether the trial court abused its discretion in approving the settlement. The Supreme Court remanded:

> [B]ecause the circuit court must determine whether the settlement is "just and reasonable" from the standpoint of all heirs, notice to those in the position of these appellants is essential so that they may make their views on reasonableness known to the court.

*Mamoulian*, 732 S.W.2d at 518. After reviewing the evidence, we find that the trial court did not abuse its discretion in approving the settlement.

When a settlement provides the named parties with preferential treatment, the proponents of the settlement have the burden of demonstrating its fairness. *Holmes v. Continental Can Company*, 706 F.2d 1144, 1147 (11th Cir.1983). This burden may be met by showing the settlement is rationally based on legitimate considerations. *Id.* at 1148.

The standards we apply in determining whether a settlement is fair, adequate and reasonable are: 1) the plaintiffs' case on the merits balanced against the amount offered in settlement; 2) the presence of collusion in reaching the settlement; 3) the reaction of members of the class to the settlement; 4) the opinion of competent counsel; and 5) the stage of the proceedings and the amount of discovery complet-

ed. *Id.* at 1149; *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir.1974); 3B J. Moore, *Moore's Federal Practice*, § 23.80[4] (2d ed. 1984).

Plaintiffs' case was based on the theory that decedent suffered from insane delusions at the time she executed the 1976 will. While decedent's behavior was somewhat eccentric, the question remained whether her eccentricities would establish lack of testamentary capacity. St. Louis University's defense was that decedent deliberately omitted her family, preferring to leave her money to charitable institutions. Further, it would have been very difficult to set aside both the 1976 and the 1968 wills since most of the evidence regarding decedent's eccentricities occurred after 1968.

Whether there was collusion during settlement negotiations is not at issue. Movants stipulated that the negotiations were conducted at arm's length and that the $600,000 offer was the best one St. Louis University was going to make.

Both counsel for plaintiffs and counsel for St. Louis University felt that $600,000 was a reasonable compromise in light of the strengths and weaknesses of plaintiffs' case. Settlement occurred after all pre-trial activity had ceased. Discovery had been completed and the trial was to begin within the next few days.

Movants contend that the settlement was undervalued, that they had a right to one-third of the settlement and that the trial court approved amounts for gifts, fees and expenses without scrutinizing the record. We find these arguments to be without merit.

■ Movants would have us believe that the value of the settlement was greater than $600,000 because St. Louis University agreed to pay the estate and inheritance taxes. St. Louis University did not negotiate for the responsibility of paying these taxes in order to benefit plaintiffs. Regardless of any arrangement they might make, St. Louis University and the executor of the estate were responsible for payment of the taxes. Bargaining away the responsibility to pay these taxes would have left them open to additional interest

and penalty should plaintiffs fail to report and pay the taxes. It was also felt that by retaining the responsibility of payment, St. Louis University might be able to reduce the magnitude of these taxes. Plaintiffs reaped little, if any, benefit since they were never liable for payment of the taxes. It was, therefore, not part of the settlement.

The Supreme Court did not direct the trial court to award movants one-third of the settlement. It directed that movants be given notice of the settlement proposal and that their interests be considered so that the trial court could determine whether the settlement was just and reasonable. *Mamoulian,* 732 S.W.2d at 518.

■ The trial court found that the $30,000 award was fair, just, and reasonable from the standpoint of all heirs. The trial judge determined that movants deliberately and knowingly declined to join the will contest action as parties plaintiff, to retain Mr. Lupo or to assume any responsibility whatever for the burdens or expenses of the litigation. It was also determined that movants knew the consequences of their decision not to participate. These are facts which may be taken into consideration in determining the fairness of the settlement distribution. While there might be a want of equity if plaintiffs receive a benefit and movants get nothing, *Id.* at 517, it is fair that plaintiffs, who risked more, receive more. The trial court did not err in failing to award movants one-third of the settlement.

■ There is no basis for movants to challenge the expenses incurred by plaintiffs. Movants are not entitled to a fixed percentage of the net proceeds. They receive $30,000 even if nothing is left over after expenses are deducted.

After reviewing all of the arguments in movants' Point I, we find that the trial court did not abuse its discretion in approving the settlement or in awarding $30,000 to movants.

■ Movants' second point contends that the trial court erred in signing findings of fact and conclusions of law prepared by plaintiffs. They argue that the findings were not supported by the evidence. We disagree.

While *in toto* acceptance of an advocate's proposed findings of fact, conclusions of law and decree is not always advisable, it is not per se erroneous. *Ederle v. Ederle,* 741 S.W.2d 883, 884–885 (Mo.App. 1987). In reviewing such a decree we presume that the trial court properly stated the facts and applied the law unless that presumption is contradicted by the record. *Binkley v. Binkley,* 725 S.W.2d 910, 912 (Mo.App.1987).

We reviewed the sufficiency of the evidence under Point I, *supra.* We have further reviewed the order of the trial court and have determined that the findings of fact and conclusions of law are supported by substantial evidence. We see no reason for further discussion. Point II is denied.

In Point III, movants contend that the Supreme Court found that they had a right to share the settlement equally with plaintiffs, therefore the plaintiffs are barred from arguing against such claim under the principles of res judicata. We have already determined that the Supreme Court did not make this finding; rather the cause was remanded for further proceedings on this very issue. Res judicata, therefore, does not apply. Point III is denied.

■ In their last point, movants claim that the trial court erred in failing to award them prejudgment interest. As a general rule, prejudgment interest is only allowed on liquidated claims. *Schnucks Markets, Inc. v. Cassilly,* 724 S.W.2d 664, 668 (Mo. App.1987). A claim is considered liquidated if its value is either known or readily ascertainable. *Id.* Since the $30,000 award to movants was made, after remand, in the sound discretion of the trial court, it was not previously ascertainable and, therefore, not liquidated. The trial court did not abuse its discretion in failing to award interest.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.