**Bruce ARRINGTON, Appellant,**

v.

**Anita HAMPTON, Respondent.**

**No. WD 63725.**

Missouri Court of Appeals,
Western District.

Feb. 1, 2005.

John L. Williams, Kansas City, MO, for appellant.

Tracey T. Chappell, Kansas City, MO, for respondent.

Before: NEWTON, P.J., LOWENSTEIN and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

Bruce Arrington (Father) appeals from the trial court's judgment on his motion to modify child custody and child support. The trial court ordered that Anita Hampton (Mother) and Father have joint legal and physical custody with Mother's address designated as the child's mailing address for mailing and educational purposes. This appeal follows.

## FACTS

Father and Mother had one child, Abrea, born on April 7, 1995. The parties never married. Father filed a paternity action approximately ten months after the child's birth. The judgment of paternity declared Father to be the child's natural father and provided that Father and Mother would have joint legal custody, although

Mother was to be the child's primary custodian.[1]

During the summer of 2003, when the child was visiting Father pursuant to the judgment of paternity, Father learned that Mother's husband had improper sexual contact with the child. As a result, Father filed a motion to modify child custody and child support. The trial court modified the custodial arrangement, granting both parents joint legal and physical custody but ordered that Mother's address be used as the child's address for mailing and education purposes.

## STANDARD OF REVIEW

 The trial court's judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Furthermore, greater deference is given to the trial court's determination in child custody proceedings than in any other type of case. *Newell v. Rammage,* 7 S.W.3d 517, 521 (Mo.App.1999). It is presumed that the trial court reviewed all evidence and based its decision on the child's best interests. *K.J.B. v. C.A.B.,* 883 S.W.2d 117, 122 (Mo. App.1994).

## I.

 Although Father's first point on appeal contends that the trial court "erred in designating the respondent's address as the mailing address of the minor child for mailing and educational purposes," his true complaint lies in the fact that the trial court did not modify the child custody arrangement to allow Father a greater period of custody. In other words, Father complains that there was insufficient evidence to support the trial court's judgment.

Section 452.410.1[2] provides the requirements that must be satisfied before the trial court may modify a child custody decree:

> [T]he court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

§ 452.410.1. In determining custody in accordance with the child's best interest, the trial court must consider eight factors:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any histo-

---

1. Although this court recognizes that the term "primary physical custody" is no longer used in child custody cases, *See Loumiet v. Loumiet,* 103 S.W.3d 332 (Mo.App.2003), the term is used only to reflect the trial court's language in issuing the judgment of paternity.

2. All statutory references are to RSMo. (2000) unless indicated otherwise.

ry of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2.

Here, the trial court did find that there had been a significant change in circumstances in that there were substantiated allegations of sexual contact between the child and Mother's husband. However, the trial court found that it would be in the child's best interest for Mother to retain custody of the child for a greater portion of the year. The trial court noted that Mother had no knowledge of the abuse and had since moved out of the home she shared with her husband. The court also found that Mother had made arrangements for her husband to not have any further contact with the child. As such, the trial court was satisfied with the efforts made by Mother to assure the child's safety.

Father notes in his argument that the trial court placed a significant emphasis on the fourth factor enumerated in Section 452.375.2 concerning "[w]hich parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent." Mother testified that Father would sometimes "snatch" the phone away and interrupt conversations between Mother and child. Furthermore, Father even testified that he had tape-recorded such conversations when the child was staying with him. Accordingly, the trial court found that Father interfered with the "unfettered communications" between Mother and child and, therefore, would be less likely to allow the child less frequent, continuing and meaningful contact with Mother.

Father argues that the evidence clearly shows that such a finding was erroneous. He specifically points to Mother's testimony at trial indicating that she did not want the child to see Father again. Mother testified that "[she] would not like for [the child] to leave the State of Missouri again." However, Mother further elaborated that "[i]f those papers say that she has to go, then I don't have any choice. I never tried to keep my daughter from her father, ever." It would appear that despite her wishes, Mother would not prevent Father from exercising his parental rights and would obey the court's judgment. As such, the trial court did not err in finding this factor in favor of Mother, nor did it err by finding that it was not in the child's best interest for Father to have custody for a greater portion of the year.

## II.

■ Father's second point claims that the trial court erred in ordering that Mother be granted the income tax exemption for the child for the 2003 tax year. He argues that there was no request made or any evidence heard at trial regarding the income tax exemption.

■ Unless there is a contrary court order or a written declaration to not claim the exemption, the custodial parent is entitled to the tax exemption for a dependent child under the Internal Revenue Code. *Rogers v. Rogers,* 923 S.W.2d 381, 385

(Mo.App.1996); 26 U.S.C. § 152(e) (1994). Here, there is no dispute that Mother was the custodian of the child during 2003. Accordingly, Mother was already entitled to the tax exemption for the child. Point denied.

### III.

 Father's final point claims that the trial court erred in ordering him to pay the entire amount of fees assessed by the guardian ad litem in representing the child. Specifically, he points to the trial court's oral pronouncement that both he and Mother be equally responsible for such fees and that the amount of $1250 be divided equally. Mother concedes that the fees should have been divided equally. Therefore, pursuant to Rule 84.14, the trial court's judgment is amended to reflect the Father's obligation to pay $625, one-half of the guardian ad litem fees, rather than the full amount. In all other respects, the judgment is affirmed.

All concur.